# Fratarcangeli v. Fratarcangeli

*Michael Mancuso,* for plaintiff.
*Elliot B. Edley,* for defendant.

ZULICK *J.,* March 8, 2011—This divorce case came before the court for a hearing on Licet Fratarcangeli's (wife) motion for special relief on December 21, 2010. The motion sought to set aside Frank Fratarcangeli (husband) and wife's postnuptial agreement, sought to disqualify husband's counsel, Elliot B. Edley, Esq., for a claimed conflict of interest, and sought to compel discovery. The parties were given an opportunity to obtain a transcript and file briefs following the hearing.

## FINDINGS OF FACT

1. Husband and wife were married on September 13, 2002.

2. Their son, Frank Fratarcangeli, Jr., age 9, was born on July 13, 2001.

3. Husband resides at 773 Blue Mountain Lake, East Stroudsburg, Pennsylvania. The parties' son Frank resides there with him.

4. Wife, age 33, resides with her parents in New Jersey. She has one other child, Kayla, 14.

5. Wife's sole source of income is Social Security disability in the amount of $450 per month.

6. On August 19, 2003, husband purchased property on Main Street, Stroudsburg from Penn Stroud Hotel, Inc. for $600,000. At the time of the hearing, he was receiving

rents from this property. NT 15.

7. On June 30, 2005, husband and wife purchased Lot 535, Blue Mountain Lake, Stroud Township, Monroe County, Pennsylvania for $395,000.

8. On November 7, 2005, husband purchased an Exxon station on Route 209 in Middle Smithfield Township for $1.6 million dollars.

9. The parties separated on or about October 15, 2007, when wife was given exclusive possession of the marital residence by order of this court.

10. After the parties married, husband was employed managing two tobacco shops he owned. These businesses were called F&T Tobacco.

11. At the time of the hearing, husband managed his Exxon station in Middle Smithfield Township as a full-time occupation.

12. Wife became addicted to painkillers following surgeries she had after the parties' son Frank Jr. was born. Husband testified that wife used Codeine, Oxycontin, Percocet and Vicodin.

13. Husband tried to get wife to go into a rehabilitation facility.

14. Elliot B. Edley, Esq. has represented husband in the past and husband considers him his family lawyer.

15. Attorney Edley represented wife in a custody proceeding in *Licet Fratarcangeli v. Maria Mendez and Heriberto Quirindongo*, No. 1107 Civil 2005, in this court from February through June, 2005. The case involved wife's claims for custody of her minor daughter Kayla

against third parties (the maternal grandmother and father of Kayla, respectively).

16. Attorney Edley filed this action for divorce and custody against wife on October 2, 2007 and has represented husband against wife in these divorce proceedings and in custody proceedings involving the parties' son Frank.

17. Attorney Edley wrote a letter to the custody conciliator on November 27, 2007 expressing concerns about the mother being "impaired."

18. Attorney Edley prepared a draft postnuptial agreement on husband's behalf in May, 2008.

19. On May 14, 2008, husband asked wife to come to the Exxon station where he was working to pick up some money. He did not mention that there was an agreement he wanted her to sign. When she got to the station he showed her the postnuptial agreement and asked her to sign it. When she refused, he said he would not give her any more money or let her see her son if she did not sign it. Wife was relying upon husband for financial support at that point; he was providing her with an apartment, car and money.

20. The parties signed the agreement before a notary public on May 14, 2008.

21. Husband agreed in the postnuptial agreement to place $30,000 upon the execution of the agreement by wife in escrow with Attorney Edley. Husband has not done this. NT 28.

22. The parties agreed to sell their condominium in the

Dominican Republic. The property has never been listed for sale.

23. Since the time of the parties' separation, wife has been repeatedly hospitalized for mental health disorders and addictions.

24. Wife lived in the apartment provided by husband for a period of two years as stated in the agreement. "Wife shall have the opportunity to live rent free at 38 A Pocono Boulevard in the apartment that she is in for a period of up to two years if she pays all expenses including utilities."

## DISCUSSION

Wife's motion for special relief seeks several remedies. She asks to set aside the parties' postnuptial agreement, requests disqualification of husband's counsel due to an alleged conflict of interest, and seeks to compel discovery.

1. *Validity of the Postnuptial Agreement.*

The resolution of marital property rights through postnuptial agreements is the means by which most divorce cases are resolved in this county, and this private resolution of parties' disputes is encouraged by Pennsylvania law. *Laudig v. Laudig*, 624 A.2d 651, 653 (Pa. Super. 1993). Postnuptial agreements are contracts and are governed by contract law. *Laudig*, supra. Also, the principles applicable to prenuptial agreements are "equally applicable" to postnuptial agreements. *Stoner v. Stoner*, 572 Pa. 665, 672, 819 A.2d 529, 533 n. 5 (Pa. 2003); *Paroly v. Paroly* 876 A.2d 1061, 1063 (Pa. Super. 2005).

The seminal case in Pennsylvania on the validity of

these agreements is *Simeone v. Simeone*, 525 Pa. 392, 581 A.2d 162 (1990). There, our Supreme Court:

> analyzed the enforceability of a prenuptial agreement and clarified the standards for determining the validity of marital settlement agreements generally. Under *Simeone*, we are not permitted to review the reasonableness of a marital settlement agreement to determine its validity, and the fact that the parties did not have separate representation is not relevant. That case abolished prior, paternalistic approaches to enforcing such agreements and announced, "Absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." *Id.* at 400, 581 A.2d at 165.

*Paroly v. Paroly*, 876 A.2d 1061, 1065 - 66 (Pa.Super. 2005).

The *Simeone* court reaffirmed the "longstanding principle that a full and fair disclosure of the financial positions of the parties is required. Absent this disclosure, a material misrepresentation in the inducement for entering a prenuptial agreement may be asserted." *Simeone* at 402, 581 A.2d at 167. The Supreme Court also stated that "(i)f an agreement provides that full disclosure has been made, a presumption of full disclosure arises. If a spouse attempts to rebut this presumption through an assertion of fraud or misrepresentation then this presumption can be rebutted if it is proven by clear and convincing evidence." *Id.* at 402, 581 A.2d at 167.

"Whether adequate disclosure has been made will depend on the facts and circumstances of individual

cases." *Mormello v. Mormello*, 682 A.2d 824, 827 (Pa. Super. 1996). Finally, an agreement is valid even if it does not contain financial disclosure itself and can be upheld if it merely recites that such disclosure has been made. *In re Estate of Hartman*, 582 A.2d 648 (Pa. Super. 1990) (marital settlement agreement not invalid because it did not contain parties' respective financial disclosure as it stated that disclosure was made and fact that such disclosure was made was affirmed by testimony of scrivener).

Wife's decision to sign the postnuptial agreement may not have been a financially prudent one. It is also true that she had battled prescription drug addiction and had mental health issues during the parties' marriage. On the day she signed the agreement, husband was supporting her in an apartment and threatened to make it difficult to see her son if she did not sign. However, there is no evidence that wife was not competent at the time she signed the agreement. She also could have obtained legal advice before signing the agreement; she had obtained counsel earlier during this case. There is also no evidence that wife was unable to read and understand the agreement on the day she signed it before a notary public. In the absence of threats or actual physical harm, a party who has reasonable opportunity to consult with counsel before entering a contract cannot later invalidate it by claiming duress. *Carrier v. William Penn Broadcasting Co.*, 426 Pa. 427, 430, 233 A.2d 519, 521 (Pa. 1967); *Degenhardt v. Dillon, Co.*, 543 Pa. 146, 153, 669 A.2d 946, 950 (Pa. 1996).

The *Stoner* court opined that "traditional contract rules should be applied to marriage agreements." *Stoner* at 533. The court "expressly rejected an approach which would allow the court to inquire into the reasonableness of the

bargain, or the parties' understanding of the rights they were relinquishing." *Id.* The court "decline(d) to resurrect the paternalistic approaches to evaluating marriage contracts by requiring husband to explain to wife the statutory rights that she may be surrendering. Such an approach assumes that wife lacks the intelligence or ability to protect her own rights. Instead, we endorse the parties' rights to freely contract." *Id.*

A review of the parties' postnuptial agreement reveals that there was apparently full disclosure of the parties' assets, although husband was receiving most of them. No evidence has been presented to suggest that husband fraudulently concealed assets from wife. The agreement lists the parties' major marital assets and divides them. Agreement, page 3.

The agreement also has a paragraph that provides:

### FINANCIAL DISCLOSURE

Husband and wife asset (sic) that each has made a full and complete disclosure of all of the real and personal property of whatsoever and wheresoever situate belonging in any way to each of them, either jointly or separately, of all sources and amounts of income received or receivable by each party, and of every other fact relating in any way to the subject matter of this Agreement. Each party confirm (sic) that she or he is relying upon the substantial accuracy of the financial disclosure as an inducement of the execution of this Agreement. Further, both parties waive their right to have the inventory or financial disclosure statement of the other attached hereto and made a part hereof.

Postnuptial agreement, page 5.

Wife is bound by this paragraph and has failed to rebut the presumption of full disclosure by clear and convincing evidence. See *Sabad v. Fessenden*, 825 A.2d 682 (Pa. Super.2003). Wife hastily entered into the postnuptial agreement, perhaps using poor judgment in doing so. However, she has not shown a valid reason for its revocation on the basis of fraud, duress or non-disclosure.

Husband is also a signatory to this postnuptial agreement and he must also bear its consequences. The parties' agreement provided as follows:

## DIVISION OF PROPERTY

...The marital property in the Dominican Republic and the car located there shall be sold and split evenly between husband and wife. Wife shall receive the sum of $30,000.00 thirty (30) days after the entry of the divorce decree. Husband to place said funds in escrow upon signing this agreement with Elliot B. Edley, Esquire. The sum of $30,000.00 shall be deducted from wifes (sic) one-half share of the division of the Dominican Republic property.

Postnuptial agreement, page 3.

Husband did not deposit $30,000.00 in his attorney's escrow account at the time of the signing of the agreement, and at the time of the hearing, he still had not deposited the funds. NT, December 21, 2010. Husband's failure to comply with a material term of the agreement renders the agreement invalid due to failure of consideration. See *In re O'Brien*, 898 A.2d 1075, 1080 (Pa. Super. 2006) (where husband liquidated a $100,000.00 mutual fund which was

to become wife's asset under the parties' postnuptial agreement, postnuptial agreement declared invalid). To the extent that wife transferred title to husband by deeds to marital property, those deeds are likewise invalid. The parties' efforts to otherwise comply with the postnuptial agreement will be taken into consideration in the final decree of equitable distribution and/ or alimony pendente lite.

## 2. *Motion to Disqualify Counsel*

Wife's petition also seeks disqualification of husband's counsel due to an alleged conflict of interest. Attorney Edley represented wife in a custody action in this court in a suit involving her daughter, Kayla. Attorney Edley filed a complaint to confirm custody on February 11, 2005 on behalf of Licet Fratarcangeli. He attended a custody conciliation conference on her behalf on March 10, 2005.

Attorney Edley then filed this divorce action on behalf of husband on October 2, 2007. The complaint included a count for custody of the parties' minor son Frank, Jr. Wife appeared at a custody conference pro se, and husband was represented by Attorney Edley at the conference. This led to an interim custody order dated December 7, 2007.

The Rules of Professional Conduct address conflicts of interest in Rule 1.9, Duties to Former Clients:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client

gives informed consent.

Rules of Professional Conduct, 1.9.

Wife did not waive her right to object to Attorney Edley's representation of husband, so the question presented here is whether a conflict exists under these circumstances.

There is a two-prong test with respect to conflicts of interest. See generally *International Longshoremen's Ass'n Local Union 1332 v. International Longshoremen's Ass'n*, 909 F.Supp. 287 (E.D.Pa.1995). The first element is substantial relation of the prior and present matters. Matters are substantially related "when an attorney might have acquired confidential information as counsel in one matter which is also relevant to the other matter." *Id.* at 291. The second element is that the former and proposed current clients have materially adverse interests. *In re Pittsburgh Corning Corp.*, 308 B:R. 716, 730 (Bkrtcy.W.D.Pa.,2004). The comment to Rule 1.9 provides clarification of when a second case is "substantially related" to an earlier case:

[3] Matters are "substantially related" for purposes of this rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter. For example, a lawyer who has represented a businessperson and learned extensive private financial information about that person may not then represent that person's spouse in seeking a divorce... Rules of Professional Conduct, 1.9 Conflict of Interest, Comment 3.

Attorney Edley represented wife in a custody action involving her older child which was litigated in this court from February through June, 2005. On October 2, 2007, he filed a divorce and custody action against wife on behalf of husband. Although this second litigation involved divorce and a different child in the custody action, certainly the confidential information Attorney Edley obtained from wife in the first custody action could be used against her by husband in the second custody action. The comment to Rule 1.9 says as much:

> ...A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information that could be used adversely to the former client's interests in the subsequent matter. A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services.

Rules of Prof. Conduct, Rule 1.9, Comment 3.

The record from the hearing reflects the use by Attorney Edley of information gathered from wife in the first matter to advance husband's cause here:

Q: (Attorney Edley) now, your daughter, Kayla, you gave up custody of her to your in-laws; isn't that correct?

A: (Licet Fratarcangeli) No, that's incorrect.

Q: She wasn't living with her in Brooklyn, New

York?

A: I did not give up custody. I signed the papers so that she could go to school while she was there. While she was there, they took that paper and they took her and she made up a story, and the story was not even about me, it was about Frank.

Q: Wasn't the paper - didn't the paper state that you gave custody to the grandmother?

A: No, it did not state that.

Q: Wasn't that the basis that the court sent it back to Pennsylvania?

A: No.

Q: No?

A: We can pull up the file if you like. NT 61.

If an attorney might have acquired confidential information related to the subsequent representation, Pennsylvania Rule of Professional Conduct 1.9 would prevent the attorney from representing the second client. *Richardson v. Hamilton Int'l Corp.*, 469 F.2d 1382, 1385 (1972), cert. denied, 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973); *Estate of Pew*, 655 A.2d 521, 545 (Pa.Super. 1994). Attorney Edley is not able to continue to represent husband in this matter because a conflict of interest exists under the Rules of Professional Conduct.

3. *Motion to Compel Discovery*

Wife's motion for special relief includes a motion to compel discovery. Wife's counsel served interrogatories

and a request for production of documents upon husband's counsel on July 8, 2010. Husband responded with objections to the discovery requests on August 20, 2010, citing the parties' signed postnuptial agreement as the reason for non-compliance with the discovery request.

The court has found that the postnuptial agreement is invalid due to failure of consideration. Therefore, pursuant to P.R.C.P. 1030.5, husband will be directed to answer wife's outstanding discovery requests.

## CONCLUSIONS OF LAW

1. The parties' postnuptial agreement, signed on May 14, 2008, is invalid due to failure of consideration.

2. Attorney Edley is disqualified from further representation of husband in this matter due to a conflict of interest under Rule 1.9 of the Rules of Professional Conduct.

3. Husband is required to answer wife's discovery requests in equitable distribution and alimony pendente lite.

## ORDER

And now, March 8, 2011, following hearing and consideration of the parties' briefs and arguments, it is ordered as follows:

1. The parties' postnuptial agreement, signed on May 14, 2008, is hereby declared to be invalid due to failure of consideration. Any deeds signed by wife in furtherance of the invalid postnuptial agreement are likewise declared invalid.

2. Attorney Edley is disqualified from further representation of husband in this matter due to a conflict of interest under Rule 1.9 of the Rules of Professional Conduct.

3. Husband shall answer wife's outstanding discovery requests.

4. Husband is given sixty days to obtain new counsel if he chooses to do so, and to respond to wife's discovery.

5. To the extent that the parties have otherwise partially performed in accordance with the invalid postnuptial agreement, those efforts will be taken into account in the final decree of equitable distribution.