J-A27021-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARY E. MASSEY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FREDERICK A. MASSEY, JR. | : | |
| | : | |
| Appellant | | No. 467 WDA 2017 |

Appeal from the Order Entered March 15, 2017
In the Court of Common Pleas of Allegheny County Family Court at No(s):
FD 15-003025-006

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED FEBRUARY 8, 2018**

This appeal by Frederick A. Massey, Jr. ("Husband") is from a February 23, 2017 order, as amended, March 15, 2017, concluding that Mary Massey ("Wife") was not precluded from seeking alimony *pendent lite* ("APL") by the terms of the parties' separation agreement ("Agreement").  We affirm.

The trial court summarized the facts and procedural history as follows:

> The parties married on February 15, 1997 and separated on August 19, 2013.  No children were born of the marriage.  On September 5, 2013, they executed a Separation Agreement (Agreement) which provided for the "division of all assets, owned or possessed by them as marital property or separate property."  (Agreement, ¶ 9).  The Agreement contained the following provision for payments to Wife, who is disabled and collecting Social Security Disability benefits:

## SPOUSAL MAINTENANCE

> 8. The Husband will pay spousal maintenance in the amount of $2000.00 monthly to the wife until September 1, 2015. Spousal maintenance payments will commence on September 1, 2013 and will be paid on the 1st day of each and every month.

The Agreement states that it "was intended to settle only the matters addressed" and that it was understood and agreed that a "subsequent Separation Agreement will have to be made and duly incorporated into a final decree of divorce." (Agreement, ¶ 3).

Husband paid Wife $2000.00 a month from September 1, 2013 through September 1, 2015. On August 28, 2016, Husband filed a Complaint in Divorce and Wife filed a Complaint for Spousal Support. On September 1, 2015, Wife filed a Petition Raising Claims which included a count for APL. A hearing on Wife's claims was scheduled before Hearing Officer Chester Beattie for October 2, 2015. The parties cancelled that hearing date by agreement and had the matter declared complex. Prior to the hearing, Husband filed a Memorandum of Law arguing that Wife's claims for spousal support and APL were barred by the Agreement. Hearing Officer Beattie was not available on the scheduled date and the matter was heard by Hearing Officer Peggy Ferber. The Hearing Officer issued a Report and Recommendation dated December 4, 2015 finding that Wife' s Petition for APL was not barred by the language or content of the Agreement. Husband filed Exceptions which were dismissed by Order dated March 23, 2016. Husband timely appealed at #469 WDA 2016. The Superior Court quashed the appeal as interlocutory by Order dated May 4, 2016, because no divorce decree had been entered.[1]

---

[1] The prior appeal was quashed *sua sponte* by *Per Curiam* order filed May 4, 2016. That order stated:

> This appeal has been filed from an order dealing with spousal support. There is no indication that a final decree of divorce has been entered. In the absence of a final decree, the order is interlocutory and unappealable pursuant to ***Leister v.***

*(Footnote Continued Next Page)*

On May 11, 2016, an Order was entered scheduling a conference/hearing to address Wife's Complaint for Support. At the conference/hearing on July 13, 2016, Hearing Officer Bingman entered an interim order for APL without prejudice to the parties to raise their respective claims at a subsequent complex hearing. By consent of the parties, a complex hearing was held before Special Master Chester Beattie on October 14, 2016. Husband again argued that the Agreement precluded Wife's claim for APL. On November 21, 2016, Master Beattie issued a Report and Recommendation finding that the Agreement did not bar Wife's claim for APL. He found Wife to be disabled based on credible evidence and testimony and refused to assign her an earning capacity. Her net monthly income was set at $1211. Husband's net monthly income was set at $10,034. The Master recommended that Husband pay APL of $3650 per month plus $350 on arrears set at $37,938 effective December 16, 2015. Husband filed Exceptions which were dismissed by Order dated February 23, 2017. The Order was amended on March 15, 2017 to add the appropriate language to allow Husband to file an Interlocutory appeal.[2] On April 6,

_(Footnote Continued)_ _____

***Leister***, 684 A.2d 192 (Pa. Super. 1996) (*en banc*) (holding that spousal support orders, when entered during the pendency of a divorce action, are interlocutory and unappealable, even if entered pursuant to a separately filed complaint for support). Appellant's counsel argues that the matter is appealable as it involves a marital agreement controlling spousal support and equitable distribution. However, case law holds that orders upholding marital agreements are also interlocutory and unappealable. ***Kensey v. Kensey***, 877 A.2d 1284 (Pa. Super. 2005). Therefore, the appeal is hereby **QUASHED**, *sua sponte*.

2  The March 15, 2017 order, filed March 22, 2017, stated as follows:

AND NOW, this 15th day of March, 2017, upon consent of the parties hereto, it is hereby

ORDERED that the Motion be and hereby is granted. The February 23, 2017 Order is amended as follows: Husband's Exceptions to the November 21, 2016 Recommendation of Hearing Officer are hereby dismissed. This [c]ourt is of the

_(Footnote Continued Next Page)_

- 3 -

2017, the [c]ourt granted Husband's Motion for Supersedeas and stayed his obligation to pay APL pending the outcome of this appeal.

Trial Court Opinion, 6/9/17, at 1–3.

Husband filed a "Notice of Appeal of a Collateral Order of Court Pursuant to Pa.R.A.P. 311" [sic][3] on March 24, 2017, in which he averred that he was also filing "a Petition for Permission to Appeal with the Superior Court to preserve all appellate rights in the event that the Superior Court rules that the March 15, 2017 order of court is not appealable as a collateral order, and only appealable as an interlocutory appeal by permission." Notice of Appeal of a Collateral Order of Court Pursuant to Pa.R.A.P. 311, 3/24/17, at 1 n.1. Both Husband and the trial court complied with Pa.R.A.P. 1925.[4]

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯

opinion that this Order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this Order may materially advance the ultimate termination of this matter. The February 23, 2017 Order be and hereby is certified for an immediate appeal to the Superior Court.

[3] The correct rule is Pa.R.A.P. 313 (Collateral Orders).

[4] As noted, Husband filed a notice of appeal of a collateral order at the instant docket number while simultaneously filing a Petition for Permission to Appeal, docketed at 32 WDM 2017. During preliminary review, a motions panel of this Court granted the petition for permission to appeal at 32 WDM 2017. Rather than quashing the appeal at 467 WDA 2017 and directing the Prothonotary to assign a new docket number, the Motions Panel granted the petition for permission to appeal and "transferred" the petition for permission to appeal at 32 WDM 2017 to the instant docket number, 467 WDA 2017. Thus, this case is before us upon grant of permission to appeal, not appeal of a collateral order.

Husband raises the following issues in this appeal:

I. Whether the trial court erred in entering an award of alimony *pendente lite* over the defense of the parties' Separation Agreement, which disposed of all rights of support, including alimony *pendente lite*, and equitable distribution, and by entry of an order for alimony *pendente lite* where need for such award was precluded and not shown on the record.

II. Whether the trial court erred in its failure to sustain Husband's objections to a hearsay physician's statement made beyond basis of knowledge of the physician, and in the determination of Wife's earning capacity.

III. Whether the trial court erred in the determination of the monthly amount of alimony *pendente lite* and the calculation of arrears.

Husband's Brief at 6.

"It is well-established that the law of contracts governs marital settlement agreements." ***Vaccarello v. Vaccarello***, 757 A.2d 909, 914 (Pa. 2000) (quoting ***Kripp v. Kripp***, 849 A.2d 1159, 1163 (Pa. 2004)); ***Stamerro v. Stamerro***, 889 A.2d 1251, 1259–1260 (Pa. Super. 2005)*.*

> Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

***Kraisinger v. Kraisinger***, 928 A.2d 333, 339 (Pa. Super. 2007) (citation omitted). Moreover, our courts observe the following principles in reviewing a trial court's interpretation of a marital settlement agreement:

When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function. On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.

*Id*.

We have also reiterated this Court's limited role in interpreting contracts between spouses such as property settlement agreements:

A court may construe or interpret a consent decree as it would a contract, but it has neither the power nor the authority to modify or vary the decree unless there has been fraud, accident or mistake.

* * *

It is well-established that the paramount goal of contract interpretation is to ascertain and give effect to the parties' intent. When the trier of fact has determined the intent of the parties to a contract, an appellate court will defer to that determination if it is supported by the evidence.

*Lang v. Meske*, 850 A.2d 737, 739 (Pa. Super. 2004) (internal citations omitted) (quoting *Osial v. Cook*, 803 A.2d 209, 213–214 (Pa. Super. 2002)). Further, where . . . the words of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the express language of the agreement itself. *Brosovic v. Nationwide Mut. Ins.*, 841 A.2d 1071 (Pa. Super. 2004).

*Bianchi v. Bianchi*, 859 A.2d 511, 515 (Pa. Super. 2004).

The trial court concluded that Wife did not waive her right to further alimony, APL, or support. Regarding the Agreement, the court stated that Wife merely "agreed to accept spousal maintenance of $2000 per month from September 1, 2013[,] through September 1, 2015." Trial Court Opinion, 6/9/17, at 5. Noting that the Agreement provided that "it is

- 6 -

intended to settle only those matters addressed," and because APL, alimony, or spousal support after September 1, 2015, were not addressed therein, the trial court determined that Wife was not barred by the Agreement from seeking APL after that date. *Id*.

Husband's first issue asserts that the trial court's award of APL to Wife in the amount of $3,842.14 per month was an error of law because the parties' Separation Agreement precluded such an award. Husband's Brief at 19. He maintains that the trial court misconstrued the Agreement and applied a "biased and paternalistic approach as to its construction." *Id*. Husband suggests that because the Agreement provided for spousal maintenance from September, 2013, until September 1, 2015, the "plain language" of the Agreement provides that there can be no spousal maintenance after September 1, 2015. *Id*. at 23. Husband contends that his obligation of support expired on September 1, 2015, and the Agreement precluded Wife from receiving further support, including APL. *Id*. at 22.

Husband cites *Musko v. Musko*, 697 A.2d 255 (Pa. 1997), where our Supreme Court reasoned that because the settlement agreement therein precluded alimony or support, it also barred the wife from receiving APL. Husband's Brief at 25. Husband argues that the present parties specifically set a limited two-year period for Wife to receive spousal maintenance, with no provision for any support thereafter. *Id*. at 26.

Husband also avers that the trial court evidenced an "improper paternalistic approach" to construing the Agreement and a bias against Husband. Husband's Brief at 27, 28. The basis for this claim is that the trial court noted in its opinion that Wife was disabled and collecting disability benefits. Husband contends that Wife's health condition[5] is irrelevant and suggests that "[f]or the trial court to highlight Wife's medical situation without, in the same breath (or anywhere), giving credit to Husband's singular gift to her survival, is both paternalistic and biased." *Id*. at 28. In support, Husband cites **Simeone v. Simeone**, 581 A.2d 162 (Pa. 1990), and **Stoner v. Stoner**, 819 A.2d 529, 533 (Pa. 2003) (former paternalistic approach to evaluating marriage contracts ignored; parties have the right to freely contract). Because the parties may freely bargain "without the court's paternalistic intervention," Husband suggests that the trial court was not required "to ensure that Wife was aware of what she was waiving" when she signed the Agreement. Husband's Brief at 31.

Finally, in his first issue, Husband claims that Wife failed to establish the need for APL. Husband's Brief at 33. He suggests that because the parties agreed on the division of all of their assets, the only action remaining is the entry of a divorce decree. *Id*. at 35.

---

[5] Husband emphasizes that "Wife survives with a single kidney donated to her *by Husband*." Husband's Brief at 28 (emphasis in original).

We agree with the trial court that the parties' Separation Agreement does not preclude an award of APL. The following provision of the Agreement is relevant: "**The terms of this Agreement are intended to settle the matters addressed**, but it will not be incorporated into a final decree of divorce. **The Husband and Wife agree that a subsequent Separation Agreement will have to be made** and duly incorporated into a final decree of divorce." Agreement, 9/5/13, at ¶ 3 (emphases added). While Husband's representation that the Agreement "set a limited period of two years for Wife to receive spousal maintenance," Husband's Brief at 26, is correct, his claim that it provided "no provision for any other support thereafter" *id*., flies in the face of the language providing for contemplation of additional, future provisions, as noted above. In our view, the inclusion of this language compels the conclusion that the parties contemplated additional provisions beyond the subjects and/or time periods addressed.

Further, Husband's reliance on *Musko* is misguided. Our Supreme Court, at the outset, defined the sole question therein as "whether a valid antenuptial agreement which states that a spouse 'shall not be entitled to receive any money or property or alimony or support' in the event of divorce or separation precludes the award of alimony pendente lite (APL)." *Musko*, 697 A.2d at 255. There is no such definitive exclusionary language before us in the instant case, and we reject the applicability of *Musko*. The Supreme Court concluded that the words used in the *Musko* agreement

were clear and unambiguous. *Id*. at 256. If the parties had included such a clear provision in the instant Agreement, our result would be otherwise. Here, however, the parties specifically noted that the Agreement addressed only specifically identified subjects within a specifically defined period and included the admission that further provisions would be forthcoming. *Musko* does not control this matter.

Husband's suggestion that the trial court revealed a "paternalistic" predilection and "bias" because the court referred to Wife's medical situation without, "in the same breath (or anywhere), giving credit to Husband's singular gift to her survival," the donation of a kidney, Husband's Brief at 28, likewise requires minimal comment. Husband's concomitant reliance on a line of cases that dispelled a paternalistic interference with a woman's freedom to contract, *e.g.*, *Simeone*, 581 A.2d at 165, is misplaced. The trial court refers to Wife's disability and her collection of Social Security Disability Benefits only twice in its opinion, and both references were informational explanation. Trial Court Opinion, 6/9/17, at 1, 3. Husband cites nothing to persuade us that the trial court's reference to Wife's disability without emphasizing that Husband had donated a kidney to Wife was indicative of a bias against Husband.

Regarding Husband's final claim of his first issue, that Wife never established the need for APL, we note that Wife testified that she had nearly depleted two small IRA accounts. N.T., 10/14/16, at 43–44, 65–68. This

evidence was offered and accepted by the trial court for the purpose of showing why Wife had no money to pay counsel fees going forward. *Id*. at 67. Thus, we reject Husband's allegation and conclude that Wife proffered evidence that she required APL to defend her interests in the pending divorce action, which is the standard for showing the need for APL. *See DeMasi v. DeMasi*, 597 A.2d 101, 105 (Pa. 1991) ("APL focuses on the ability of the individual who receives the APL during the course of the litigation to defend her/himself.").

In his second issue, Husband asserts that the trial court erred in failing to sustain Husband's hearsay objection to Wife's Physician Verification Form[6] ("the Form"). The Form set forth Wife's permanent disability and inability to work. Husband's Brief at 36. Referencing Pa.R.C.P. 1910.29(b)(2), which the trial court relied upon in determining that the Form was properly admitted, Husband states that the Form may be admitted into evidence without a physician's testimony. Husband's Brief at 37. However, Husband asserts that the Form, on its face, failed to establish a sufficient basis for concluding that Wife was unable to work. *Id*. Husband also objects to the trial court's conclusion that the Form was subject to mandatory admission because Husband did not object to it within twenty days of its initial

---

[6] Physician verification forms are specific documents whose form, use, and admissibility is governed by Pa.R.C.P. 1910.29. The documents are used in support cases to verify that a party has a medical condition that affects his or her ability to earn income over a specific period. *Id*.

presentation. *Id*. at 38. Thus, Husband maintains that the trial court's reliance on the Form for its conclusion that Wife is disabled and unable to earn income was error. Rather, Husband suggests that Wife's reported income in 2013–2014 supports that Wife "is fully capable of working" in a job at least paying minimum wage. *Id*. at 39–40.

Pennsylvania Rule of Civil Procedure 1910.29 provides, in pertinent part, as follows:

> **(a) Record Hearing.** Except as provided in this rule, the Pennsylvania Rules of Evidence shall be followed in all record hearings conducted in an action for support. A verified petition, affidavit or document, and any document incorporated by reference therein which would not be excluded under the hearsay rule if given in person shall be admitted into evidence if (1) at least 20 days' written notice of the intention to offer them into evidence was given to the adverse party accompanied by a copy of each document to be offered; (2) the other party does not object to their admission into evidence; and (3) the evidence is offered under oath by the party or witness. An objection must be in writing and served on the proponent of the document within 10 days of the date of service of the notice of intention to offer the evidence. When an objection is properly made, the Pennsylvania Rules of Evidence shall apply to determine the admissibility of the document into evidence.
>
> **(b) Medical Evidence.**
>
> * * *
>
> *(2) Record Proceeding*. If the matter proceeds to a record hearing and the party wishes to introduce the completed Physician Verification Form into evidence, he or she must serve the form on the other party not later than 20 days after the conference. The other party may file and serve an objection to the introduction of the form within 10 days of the date of service. If an objection is made and the physician testifies, the trier of fact shall have the discretion to allocate the costs of the physician's testimony between the parties. If there is no

- 12 -

objection, the form may be admitted into evidence without the testimony of the physician.  In the event that the record hearing is held sooner than 30 days after the conference, the trier of fact may provide appropriate relief, such as granting a continuance to the objecting party.

\* \* \*

EXPLANATORY COMMENT--2000

\* \* \*

If the requisite 20-day notice is given and there is no objection, the document must be admitted into evidence under this rule and 23 Pa.C.S. § 4342(f).

Pa.R.C.P. 1910.29 (a), (b)(2), Explanatory Comment.

Regarding the Form, the trial court stated as follows:

Wife offered into evidence a Physician Verification Form signed by her treating physician which stated that Wife is permanently disabled due to renal failure and diabetes.  At the hearing, Husband objected to admission of the form as being grossly deficient; not based on sufficient information and offering a vocational opinion rather than a medical opinion.

\* \* \*

Explanatory comments to [Pa.R.C.P. 1920.29] state that if the requisite 20-day notice is given and there is no objection, the document **must** be admitted into evidence under this rule.  The requisite notice was given and Husband failed to file and serve a timely objection.  The [c]ourt agreed with [the] Master that the [F]orm was properly admitted under Rule 1019.29.

Trial Court Opinion, 6/9/17, at 5 (emphasis in original).

Examining the Explanatory Comment's reference to 23 Pa.C.S. § 4342(f), we note that the Form was not subject to hearsay exceptions.  23 Pa.C.S. § 4342(f) ("For proceedings pursuant to this section, a verified petition, affidavit or document and a document incorporated by reference in

- 13 -

any of them which would not be excluded under the hearsay rule if given in person **is admissible in evidence if given under oath by a party or witness**.") (emphasis added). It was, however, subject to a notice requirement under Rule 1910.29(b)(2), which requires the documents to be served "on the other party not later than 20 days after the [support] conference" and the petitioner to allow ten days for the other party to object to the document. If proper notice is provided and there is no objection, the Form must be admitted into evidence without the physician's testimony. Pa.R.C.P. 1910.29(b)(2). Where notice was not provided or an objection is leveled, "the rules of evidence apply to determine the document's ultimate admissibility." Pa.R.C.P. 1910.29, Explanatory Comment—2000.

At the October 14, 2016 hearing regarding the APL claim before the hearing officer, Husband effectively admitted that he was given a copy of the Form within twenty days of the date of the conference held on July 13, 2016. N.T., 10/14/16, at 39. Husband did not timely object to the Form; indeed, he waited over three months after receipt of the Form. *Id*. at 39–40. Therefore, as proper notice was provided and there was no timely objection, Pa.R.C.P. 1910.29(b)(2) provides that the Form must be admitted into evidence without the physician's testimony. The trial court did not err in ruling the Form admissible.

In his final issue, Husband argues that the trial court erred in adopting the Hearing Officer's ruling effective December 16, 2015, that "Husband

- 14 -

would pay Wife the sum of $3,842.15 per month for [APL], allocated $3,492.15 for current [APL] and $350 for arrears, with Husband continuing to be responsible for providing Wife health insurance and for paying 90% of Wife's unreimbursed medical expenses after her initial payment of $250 per year." Husband's Brief at 41. Thus, Husband avers that assuming, *arguendo*, Wife is entitled to APL, the correct amount would be $2,578 per month because "Husband pays for Wife's health insurance[] and deducting Wife's share of such payment, the monthly [APL] award would be $2,487." *Id*. at 42. Husband contends that the trial court incorrectly valued the outstanding arrears at $37,938.29, rather than $24,091.41. *Id*. at 42–43.

This claim by Husband involves the contention that the trial court erred by not assigning Wife an earning capacity or pension income in addition to her Social Security Disability Benefits. Wife testified that while her American United Life Insurance Company statement showed a reduction for "Pension Disability," she actually did not receive any pension income at all:

> [By Wife's counsel]: Mary, do you currently receive $1,060 a month from any pension that you know of?
>
> [Wife]: No.
>
> Q. Do you have any idea why on Exhibit 2 it says that your benefit is reduced by a pension disability of $1,060 a month?
>
> A. No.

N.T., 10/14/16, at 63–64.  Upon further inquiry by the hearing officer, who asked Wife, "[I]s there money out there from American United Life Insurance Company that you're not receiving that you have a right to receive?", Wife responded, "No."  *Id*. at 65.

Husband suggests that the hearing officer's designation of $3,492.15 as current APL was incorrect and instead, asserts that any award of APL properly was $2,578 per month less Wife's share of her health insurance.  Husband's Brief at 42.  He contends that the trial court's reliance on "Wife's Exhibit 3 was improper and an error of law," *id*., without identifying such exhibit or noting where in the record it exists.

We are unable to address this claim and hold it is waived.  As noted, Husband references Exhibit 3 without identifying it or explaining where it can be found in the certified record.  Husband's Brief at 42.  More significantly, however, Husband's Pa.R.A.P. 1925(b) statement failed to apprise the trial court of the nature of Husband's claim.  Husband presented the issue as, "Whether the trial court erred in the determination of [APL] and the calculation of arrears."  Statement of Matters Complained of on Appeal, 4/7/17, at ¶ 3.  This very general statement explains why the trial court believed its explanation of the first two issues disposed of the third issue.  Trial Court Opinion, 6/9/17, at 6.

Our appellate rules require the Rule 1925(b) statement to "concisely identify each error . . . **with sufficient detail to identify all pertinent**

**issues for the judge**." Pa.R.A.P. 1925(b)(4)(ii) (emphasis added). The Note to the rule explains the necessity for counsel to "comply with the concise-yet-sufficiently-detailed requirement" in order to avoid waiver. ***Id***., note. Because the single sentence in the Pa.R.A.P. 1925(b) statement is wholly unclear regarding its precise nature, we find the issue waived. ***See In re A.B.***, 63 A.3d 345, 350 (Pa. Super. 2013) (A concise statement must be specific enough for the trial court to identify and address each issue the appellant wishes to raise on appeal; this Court may find waiver where a concise statement is too vague).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/8/2018