J-S51005-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| THOMAS E. YOST | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AMY E. YOST | : | |
| | : | |
| Appellant | : | No. 495 MDA 2019 |

Appeal from the Decree Entered March 5, 2019
In the Court of Common Pleas of Union County
Civil Division at No(s):  17-0632

BEFORE:  PANELLA, P.J., GANTMAN, P.J.E., and MUSMANNO, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED NOVEMBER 08, 2019**

Amy E. Yost ("Wife") appeals from the March 5, 2019 divorce decree entered in the Union County Court of Common Pleas. Specifically, Wife challenges the order granting Thomas E. Yost's ("Husband") petition for enforcement of agreement and contends, *inter alia*, that the agreement was not a final resolution of the parties' economic issues attendant to their divorce. After review, we affirm.

In summary, Wife and Husband married on September 17, 1996, and separated on April 15, 2007. Prior to separation, Wife drafted and the parties executed a document titled "Agreement of Seperation [sic] of Property and Financial Responsibility Between Thomas E. Yost and Amy E. Yost." In that document (hereinafter, "Agreement"), it delineates which party will take possession of certain household items (e.g., a television, riding lawn mower, and piano). Further, the Agreement identifies the proposed distribution of

financial accounts and prospective financial support obligations. The Agreement was signed by both parties and was notarized.

Husband filed a complaint in divorce on October 12, 2017. Wife filed an answer and counterclaim to Husband's complaint, asserting her alleged right to equitable distribution of the marital estate, alimony *pendente lite*, reasonable attorney's fees, costs of suit, and alimony. Thereafter, Husband filed a petition for enforcement of the Agreement. The trial court granted Husband's petition, finding that: 1) the Agreement was a valid and enforceable contract between the parties; 2) the Agreement resolved all economic claims; and 3) Wife was given full and fair financial disclosure of Husband's assets.

The parties divorced by decree on March 5, 2019. Wife filed a timely appeal and challenges the trial court's grant of Husband's petition.[1] **See** Trial Court's Opinion, 5/28/19, at 1-2.

Wife raises six questions for our review:

> 1) Did the trial court err in determining the Agreement was a full and final resolution of the parties' economic issues attendant to the divorce?

---

[1] As the trial court's order granting Husband's petition is implicitly an order that only seeks to distribute current property and allocate the burdens of future support claims, it was interlocutory. **See Wilson v. Wilson**, 828 A.2d 376, 378 (Pa. Super. 2003) (citation omitted) (defining a final order as "one which ends the litigation or disposes of the entire case" and indicating that "settlement of economic and property claims is merely a part of the trial court's broader power to terminate the marriage"). Accordingly, the appeal is properly before us as the trial court's grant could not have been reviewed until it had "been rendered final by the entry of a decree in divorce." **Id**. (citation omitted).

2) Did the trial court err in denying Wife's claims in equitable distribution, alimony, alimony *pendente lite*, and reasonable attorneys' fees and costs?

3) Did the trial court err in permitting parol evidence to interpret certain aspects of the Agreement?

4) Did the trial court err in determining that Husband provided Wife full and fair financial disclosure of his assets?

5) Did the trial court err in determining that Wife waived her interest in Husband's Federal Employees' Retirement System ("FERS") Plan?

6) Did the trial court err in determining that the economic issues between the parties that are not addressed in the Agreement are resolved by the Agreement?

*See* Appellant's Brief, at 4.

"When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function." **Stamerro v. Stamerro**, 889 A.2d 1251, 1257 (Pa. Super. 2005) (citation and quotation marks omitted). With that in mind, "we must decide whether the trial court committed an error of law or abused its discretion." **Id**. (citation omitted).

> "[J]udicial discretion" requires action in conformity with law on facts and circumstances before the trial court after hearing and due consideration. Such discretion is not absolute, but must constitute the exercises of sound discretion. This is especially so where, as here, there is law to apply. On appeal, a trial court's decision will generally not be reversed unless there appears to have been an abuse of discretion or a fundamental error in applying correct principles of law. An "abuse of discretion" or failure to exercise sound discretion is not merely an error of judgment. But if, in reaching a conclusion, law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or lacking in reason, discretion must be held to have been abused.

- 3 -

*Id*. (citation omitted). "Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation." *Id*. (citation omitted). Our standard of review over questions of law is *de novo* and the scope of our review is plenary. *See id*. (citation omitted). "However, we are bound by the trial court's credibility determinations." *Id*., at 1257-58.

Wife's arguments can be distilled down into three categories: 1) the Agreement was not a full and final resolution of all obligations attendant to divorce; 2) the trial court erred by admitting parol evidence in its interpretation of the Agreement; and 3) Husband did not provide Wife with a full and fair financial disclosure of his assets. *See* Appellant's Brief, at 7-20. Given the large amount of overlap between these claims, all three can be considered in tandem with one another.

"When interpreting an antenuptial agreement, the court must determine the intention of the parties." *Sabad v. Fessenden*, 825 A.2d 682, 688 (Pa. Super. 2003). "When the words of a contract are clear and unambiguous, the intent of the parties is to be discovered from the express language of the agreement. Where ambiguity exists, however, the courts are free to construe the terms against the drafter and to consider extrinsic evidence in so doing." *Id*. (internal citations and quotation marks omitted).

Wife argues that because there was no reference in the Agreement to assets that were not enumerated nor language evincing an intent to resolve outstanding statutory rights that Wife may have been entitled to, the

Agreement only allocates those items specifically identified and nothing more. **See** Appellant's Brief, at 7-11. As such, Husband's FERS plan as well as the concepts of equitable distribution, alimony, alimony *pendente lite*, and attorney's fees should have been considered and adjudicated by the trial court.

We note that the Agreement, while in the reproduced record, is not in the certified record. **See** Reproduced Record, at 22, 26. Therefore, arguably, Wife has waived all of her claims attacking the Agreement. **See Commonwealth v. Petroll**, 696 A.2d 817, 836 (Pa. Super. 1997) ("When a claim is dependent on materials not provided in the certified record, that claim is considered waived.") (citation omitted). However, even if we were to address the merits of her claims based upon the document in the reproduced record, we find them to fail.

First, Wife concedes that "she prepared the document," **id**., at 8, so to the extent the trial court found an ambiguity with the Agreement, the trial court was free to construe its terms against Wife. **See Windows v. Erie Ins. Exch.**, 161 A.3d 953, 957 (Pa. Super. 2017).

Second, the sole case cited by Wife, **Sabad v. Fessenden**, holds, in part, that a claim to alimony was not waived through the existence of a marital agreement that was silent on the issue because the parties agreed that there was no intent to waive alimony rights. **See** 825 A.2d at 691.

Here, Husband does not agree that there was no intention to waive

alimony rights. As such, the intent of the parties is a disputed issue.

Instead, the more analogous case is our Supreme Court's decision in ***Stoner v. Stoner***, which held that an uncounseled postnuptial agreement does not have to contemplate or explicitly waive statutory rights, such as alimony, to be valid and cause waiver of those statutory rights. ***See*** 819 A.2d 529, 534 (Pa. 2003). Instead, in assessing whether a postnuptial agreement is enforceable, "the right balance is struck by requiring full disclosure of financial assets, in conjunction with the protection of traditional contract remedies for fraud, misrepresentation or duress." ***Id***., at 533. Therefore, if full financial disclosure is provided and there is no allegation of fraud, misrepresentation, or duress, the Agreement is enforceable.

Third, the trial court found the Agreement to be a full and final resolution of all outstanding economic issues between the parties and thereafter received testimony to ascertain whether Wife was provided with a full financial disclosure of Husband's assets. In accordance with the ***Stoner*** decision, we conclude that the trial court was free to proceed in the manner that it did. Although the Agreement does not mention statutory rights, Husband and Wife did not need to explicitly waive all claims to equitable distribution, alimony, alimony *pendente lite*, and reasonable attorney's fees for the Agreement to be enforceable and for the trial court to find waiver of those rights. As our Supreme Court declined "to impose the additional inquiry as to whether the parties were sufficiently advised of their statutory rights[,]" ***id***., at 672, there

has been no error of law nor abuse of discretion. Accordingly, when the trial court found the Agreement to be valid, it was empowered to simultaneously conclude that Wife waived her right to those potential statutory rights.

Here, the court found that the Agreement contemplated all outstanding economic issues. The Agreement unequivocally identifies that "the *total financial obligation* that [Husband] will pay [Wife] … is $56,100." Agreement, Reproduced Record, at 22 (emphasis added). To contradict the clear language that this Agreement is anything but a complete and terminal distribution of all financial and chattel property would be to override the intention of the parties.

Moreover, as there are no allegations of fraud, misrepresentation, or duress, the trial court was left to consider whether Wife received full financial disclosure of Husband's assets. Using extrinsic evidence, it concluded that even if Wife was not cognizant that FERS and the Thrift Savings Plan were two separate financial instruments, the evidence conclusively established that she should have been aware of this distinction, and in any event, Husband affirmatively disclosed the same. **See** Trial Court Opinion, at 4 (citations to the record omitted). The trial court was within its power to consider this extrinsic evidence because the Agreement did not assert that the inventory of the parties' assets was complete, nor does the document maintain that Wife received full financial disclosure prior to signing it. As a result, the court was required to consider extrinsic evidence.

In resolving whether the Agreement was enforceable as written, the trial

court stated:

> Wife offered no evidence that the documentation in Husband's possession regarding the FERS was not provided to her. Wife's testimony only related [to] her mistake of assuming the benefits (TSP and FERS) were one individual benefit. Husband testified Wife "took care" of the parties' finances, including preparing the parties' tax returns. Wife provided the values the parties' used for Husband's Thrift Savings Plan. Wife maintained the parties['] filing system and label the file "FERS (TSP)." The Court found the testimony of Husband credible. Husband testified the file contained statements from both the TSP and FERS. Husband testified the file was provided to him by Wife. Wife did not deny having the FERS statements. Husband testified that FERS documents included a numerical value to which he would be entitled. . . . Husband has met his burden of providing an affirmative disclosure of relevant financial information regarding FERS.

***Id***.

As we are bound by the trial court's credibility determinations, ***see Stamerro***, the record supports the trial court's conclusion that Husband had sufficiently apprised Wife of his FERS pension. As Wife presented no other basis to challenge the enforceability of the Agreement, we cannot conclude the court erred in concluding the agreement is enforceable and that it constitutes a complete resolution of the economic claims between the parties.

Having found none of Wife's issues to be meritorious, we affirm the trial court's divorce decree.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/08/2019</u>