J-A22037-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DENISE C. BELKE | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | Appellant | |
| | v. | |
| STEPHEN W. BELKE | | |
| | Appellee | No. 1932 MDA 2019 |

Appeal from the Order Entered September 7, 2017
In the Court of Common Pleas of Berks County
Domestic Relations at No.: 13-3879

| | | |
|---|---|---|
| DENISE C. BELKE | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | Appellant | |
| | v. | |
| STEPHEN W. BELKE | | |
| | Appellee | No. 1933 MDA 2019 |

Appeal from the Order Entered October 31, 2019
In the Court of Common Pleas of Berks County
Domestic Relations at No.: 13-3879

BEFORE: SHOGAN, STABILE, and MURRAY, JJ.

MEMORANDUM BY STABILE, J.: **FILED FEBRUARY 19, 2021**

Appellant Denise C. Belke ("Ex-Wife") appeals from the October 31,

2019 order entered in the Court of Common Pleas of Berks County ("trial

court"), [1] granting in part and denying in part her exceptions to a divorce master's report and recommendation.  Upon review, we vacate and remand for further proceedings.

The facts and procedural history this case are undisputed.[2]  This case has a long and tortuous history made more complicated by [Appellee] Stephen W. Belke's ("Ex-Husband") living and working in Europe and his total lack of involvement in the latter stages of this litigation.  The parties met in Virginia where Ex-Wife was a student at George Mason University and Ex-Husband was an officer in the United States Marine Corps.  Ex-Husband earlier received a degree in chemical engineering from the University of Rochester.  The parties married in March 1988 and lived at various military installations.  After Ex-Wife gave birth to the parties' first child, they decided that she would be a stay-at-home mother.[3]  She stopped working.  Ex-Husband eventually left the armed services and took a job as an engineer with a company in Indiana.  Ex-Husband was promoted to a series of management positions.  After seven years, he left the company to become a production manager for ICI Paints in Berks County starting in the year 2000.

---

[1] As more fully explained **infra**, we dismiss as duplicative Appellant's appeal docketed at 1932 MDA 2019, where she appealed from the September 7, 2017 order.

[2] Unless otherwise specified, these facts come from the trial court's August 14, 2017 opinion, modified by its September 7, 2017 order, and the trial court's October 31, 2019 opinion.  **See** Trial Court Opinion, 8/14/17, at 1-4; Trial Court Opinion, 10/31/19, at 1-5.

[3] The parties' are parents of two adult daughters.

The parties purchased a home in Berks County but also lived for a time in Manhattan Beach, California where ICI had a plant. The parties ultimately returned to their home in Berks County. AkzoNobel purchased ICI Paints and for five years, Ex-Husband travelled back and forth from Berks County to AkzoNobel's plant in Cleveland.

In November 2007, Ex-Wife learned that Ex-Husband had been involved in extramarital affairs. When confronted by Ex-Wife, Ex-Husband admitted to the affairs and out of remorse suggested the parties enter into a post-nuptial agreement (the "Agreement"). The Agreement was drafted by Ex-Wife's counsel and the parties signed it on December 12, 2008. It provided, *inter alia*, that in the event Ex-Husband's continued extramarital sexual activity, Ex-Wife would receive 100% of the marital assets and 60% of Ex-Husband's income.

Subsequently, AkzoNobel provided Ex-Husband with an opportunity to work at their industrial coating division in Amsterdam, Netherlands. Ex-Husband accepted this offer and the parties leased an apartment in Amsterdam. Ex-Wife would visit Ex-Husband in Europe from time to time, but she primarily resided in Berks County. Ex-Husband periodically returned to the United States to spend time with Ex-Wife and go on family vacations. During this time, the parties engaged in serious arguments. The relationship between them was tumultuous and dysfunctional.

Ex-Husband eventually contacted Ex-Wife in February 2012 and told her he did not see a way forward for the parties' relationship and expressed a

desire for a divorce. Ex-Husband then filed for divorce on May 2, 2012, but later withdrew this action nine months later. On March 20, 2013, Ex-Wife filed the instant divorce action.[4] On March 22, 2016, Ex-Husband filed a motion to bifurcate the divorce proceedings. Following a hearing, the trial court granted the motion on December 28, 2016. On the same day, the trial court decreed the parties divorced, but retained jurisdiction over all economic issues.[5]

Following extensive hearings, the divorce master, on August 15, 2016, issued a report recommending that the trial court find the Agreement valid and that the marital estate be divided in accordance with the terms of the same. The parties stipulated before the divorce master that the Agreement was valid.

As of the date of the master's hearings, Ex-Wife resided part time in Pennsylvania and part time in California. Ex-Wife is employed as a flight attendant currently earning a gross income of approximately **$40,000.00** per year.

Since October 2010, Ex-Husband has resided in the Netherlands, initially holding a position there with AkzoNobel. In 2014, his position with AkzoNobel ended, and he commenced his current position with Starbucks, N.A., in the

---

[4] This became a bitter contest between the parties replete with numerous motions, discovery skirmishes, two divorce master's hearings, and two appeals to this Court.

[5] Ex-Wife appealed from the trial court's order granting bifurcation and the divorce decree (11 MDA 2017). Upon Ex-Wife's application, however, the appeal was ordered discontinued on July 5, 2017.

Netherlands. Although Ex-Husband's income was in dispute, the trial court found that in 2012, he had a gross income, including wages and bonuses, of $454,594.00, and $94,599.00 in benefit income or perquisites, for a total income of **$549,193.00**. In 2013, Ex-Husband earned a total of **$684,307.00**, consisting of $450,050.00 in wage income and $234,257.00 in benefit income. For 2014, his aggregate income was **$870,1236.00**, consisting of $644,685.00 in wages and $225,438.00 in benefit income. In 2015, his total income was **$655,613.00**, consisting of $511,957.00 in wages and $143,656.00 in benefits. Ex-Husband was subject to a 36 percent tax rate on all income.

Upon receiving the master's report, the parties' filed exceptions. Ex-Husband initially raised 75 exceptions, *see* Ex-Husband's Exceptions, 9/6/16, at 1-11, but he pared them down in his memorandum in support of the exceptions to the following:

> 1. The special master erred by failing to require [Ex-Wife] to present a foundation or to properly authenticate photographs of note cards, allegedly written by a person whom [Ex-Wife] tried and failed to produce as a witness.
>
> 2. The special master erred by allowing [Ex-Wife] to testify and introduce photographs of note cards allegedly written by a person whom [Ex-Wife] tried and failed to produce as a witness.
>
> 3. The special master erred in making numerous findings of fact that were not supported by the testimony and evidence presented.
>
> 4. The special master erred by finding that [Ex-Husband] "immediately began a relationship with Jennifer Jordan," which was not supported anywhere by the record.

5. The special master erred in his interpretation of what occurred at [Ex-Wife's] deposition, and for giving great weight to [Ex-Husband's] counsel's failure to object to unseen documents, which [Ex-Wife's] counsel refused to provide for undersigned counsel's review, despite a request therefore, on the day of the deposition.

6. The special master erred by giving great weight to the photographed note cards as evidence of Jennifer Jordan's state of mind, instead of concluding that Jennifer Jordan's state of mind was irrelevant.

7. The special master erred in failing and refusing to make rulings on numerous and varying objections throughout the hearing and allowing testimony to continue without ever making a ruling.

8. The special master erred in permitting the testimony of [Ex-Wife's] witnesses who were not listed on [Ex-Wife's] pre-trial statement, as required by Rule 1920-33(b)(3).

9. The special master erred by failing to correctly determine and to consistently indicate which party had the burden of proof for applicability of certain sections of the [Agreement], which was to the detriment of [Ex-Husband].

10. The special master erred in permitting [Ex-Husband] to be prejudiced on the first day of the hearing when, in the midst of undersigned counsel's direct examination of [Ex-Husband], the master stopped the testimony and directed opposing counsel to take over direct examination of [Ex-Husband], to his surprise and detriment.

11. The special master erred in concluding that the parties separated in February of 2012.[6]

12. The special master erred by failing to conclude that, in order for Section I of the [Agreement] to be applicable, [Ex-Husband]

_____

[6] Ex-Husband argued below that Ex-Wife admitted in her complaint for support that the parties separated in August 2011.  To the extent this argument can be read to implicate the doctrine of judicial admission and in light of the disposition of this appeal, we direct the trial court to consider on remand whether Ex-Wife is judicially estopped from claiming that they separated after August 2011.

had to have engaged in Illicit Acts, and [Ex-Wife] had to have filed for divorce because of those Illicit Acts.

13. The special master erred by failing to conclude that [Ex-Husband] had not committed Illicit Acts prior to the date of separation.

14. The special master erred by failing to conclude that Section II of the [Agreement] was not applicable.

15. The special master erred in failing to conclude that Section III of the [Agreement] should be applicable.

Ex-Husband's Memorandum In Support of Exceptions, 10/28/16, at 1-3 (unnecessary capitalizations omitted).

Ex-Wife, in turn, asserted only the following two exceptions.

1. The divorce master erred in finding that the date of separation was not irrelevant with regard to the commission of illicit acts by [Ex-Husband].

2. The divorce master erred in not finding that the date of separation was irrelevant because the Agreement is, in effect, open ended with regard to the commission of illicit acts by [Ex-Husband].

Ex-Wife's Exceptions, 9/19/16, at 1 (unnecessary capitalizations omitted).

By an opinion dated August 11, 2017 and filed on August 14, 2017, the trial court *sua sponte* determined that the Agreement was invalid, and thus unenforceable. As a result, the trial court dismissed the parties' exceptions and remanded the case to the divorce master for further proceedings. On August 30, 2017, Ex-Wife filed a petition for certification of interlocutory appeal regarding the August 14, 2017 order. On September 7, 2017, the trial court certified the order. The following day, Ex-Wife appealed to this Court

(1407 MDA 2017). On December 16, 2017, based on Ex-Husband's application, we quashed as interlocutory Ex-Wife's appeal.

On April 4, 2018, Ex-Husband's counsel withdrew her appearance and Ex-Husband entered his appearance *pro se*. Thereafter, and continuing to (at least) October 31, 2019, Ex-Husband took no part in these proceedings.

On May 15, 2018, Ex-Wife filed a motion to compel discovery, which the trial court granted on May 23, 2018. On August 13, 2018, Ex-Wife filed a petition for contempt/motion for sanctions, alleging that Ex-Husband failed to comply with the trial court's May 23 order, compelling him to respond within 45 days to Ex-Wife's outstanding interrogatories and request for production of documents. On September 20, 2018, the trial court issued an order finding that Ex-Husband intentionally violated the May 23 order. The court further ordered that: (1) Ex-Husband's net monthly income calculated for support purposes was no less than $35,642.00 for the years 2016, 2017, and 2018; (2) he could not present any evidence before the master concerning the distribution/division of marital property that differs from Ex-Wife's evidence; and (3) he pay Ex-Wife $750.00 within 30 days of the date of the order.

The divorce master's hearing on remand was held on September 27, 2018 with Ex-Wife being the only witness. On April 13, 2019, the divorce master filed his report and recommendation and proposed divorce decree. The master recommended distributing 70% of marital assets to Ex-Wife and 30% to Ex-Husband, assets being defined according to 23 Pa.C.S.A. § 3501. The master further recommended Ex-Husband pay alimony to Ex-Wife in the

amount of $11,000.00 per month for 8 years, that each party is responsible for their own debts and obligations and that each party retain items of personalty titled in his or her name or in the party's possession. Finally, the master recommended Ex-Husband pay 60% of Ex-Wife's attorney's fees.

On April 23, 2019, Ex-Wife filed 16 exceptions to the master's report,[7] which we need not reproduce here, given our disposition below. On October 31, 2019, the trial court issued an order, granting in part and denying in part Ex-Wife's exceptions. Moreover, consistent with the master's recommendation, the trial court decreed, among other things, that: (1) Ex-Wife shall receive 70% ($574,377.51) of the marital assets valued at $820,482.15; (2) Ex-Husband shall pay to Ex-Wife $11,000.00 per month in alimony for 8 years; and (3) the parties shall be responsible for their own debts and obligations. In support of its October 31 order, the trial court filed a detailed opinion, wherein it also incorporated its opinion dated August 14, 2017, as amended by its September 7, 2017 order. Thereafter, Ex-Wife appealed from the September 7, 2017 order, which we previously had declared interlocutory when we quashed her appeal, and the instant October 31, 2019 order. The trial court did not direct her to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.[8]

_____

[7] Ex-Husband did not file any exceptions the master's April 2019 report.

[8] On December 31, 2019, upon review of the docketing statements, this Court, on its own, consolidated Ex-Wife's appeals docketed at 1932 MDA 2019 and 1933 MDA 2019, respectively. On further review, as indicated in the text

On appeal, Ex-Wife argues only that the trial court erred in *sua sponte* questioning the validity of the Agreement, and declaring the same void and unenforceable based on a variety of reasons, including, among others, impossibility of performance, vagueness, material ambiguities, unconscionability, constitutional infirmities and public policy.

This case presents an issue of contract interpretation, inasmuch as the trial court construed the parties' postnuptial agreement pursuant to its jurisdiction under Section 3104(a)(1) of Divorce Code, 23 Pa.C.S.A. § 3104(a)(1). Our standard of review is *de novo* and our scope of review is plenary. *Mastroni-Mucker v. Allstate Ins. Co.*, 976 A.2d 510, 517-18 (Pa. Super. 2009), *appeal denied*, 991 A.2d 313 (Pa. 2010).

> The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. When a writing is clear and unequivocal, its meaning must be determined by its contents alone.
>
> Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is

above, it is clear that both appeals concern the trial court's September 7, 2017 order, made final and appealable by its October 31, 2019 order. Because both appeals are duplicative of one another, we vacate the December 31, 2019 consolidation order and dismiss Appellant's appeal at docket 1932 MDA 2019.

not resolved in a vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. In the absence of an ambiguity, the plain meaning of the agreement will be enforced. The meaning of an unambiguous written instrument presents a question of law for resolution by the court.

***Ramalingam v. Keller Williams Realty Grp., Inc.***, 121 A.3d 1034, 1046

(Pa. Super. 2015) (emphasis omitted).

The Agreement at issue provides in relevant part:

## I. ILLICIT ACTS

1. If Husband engages in any Illicit Act or any other sexually deviant acts, including but not limited to, visiting massage parlors, having online set [sic] through chat rooms or engaging in same sex acts or other same sex relations, at any time after the date of this Agreement and Wife seeks a divorce as a result:

(a) Wife shall receive the Assets[9] as well as any assets acquired by Husband and Wife after the date of this Agreement, whether real or personal property, wherever located, free and clear of any liability, encumbrance, or accompanying debt;

(b) Wife shall receive the greater of: (i) sixty percent (60%) of all Husband's present and future income, including but not limited to income from salary, bonuses, and stock options; or (ii) One Hundred Thousand Dollars ($100,000) per year until the earlier of Wife's or Husband's death; and.

(c) Husband shall designate Wife as the sole beneficiary and shall not remove her from any of Husband's retirement accounts and/or life insurance policies either those in existence as of the date of this Agreement or those acquired or created after the date of this Agreement.

## II. DIVORCE

---

[9] A whereas clause of the Agreement defines the term "Assets" as Ex-husband's and Ex-Wife's assets.

- 11 -

2. If Husband seeks a divorce from Wife at any time after the date of this Agreement for any reason:

(a). The parties agree to have the herein Agreement incorporated but not merged into any divorce order entered by any court of competent jurisdiction and the entry of any order deemed necessary by the court to secure the performance of the terms and conditions of the herein Agreement. It is further agreed by the parties that the herein Agreement shall be incorporated, but shall not merge, into the aforesaid decree of divorce;

(c) Wife shall receive sixty percent (60%) of all Husband's present and future income, from whatever source derived, including but not limited to income from salary, bonuses, and stock options, but such amount shall not be less than one Hundred Thousand Dollars ($100,000) per year;

(d) Husband shall designate Wife as sole beneficiary and shall not remove her from Husband's retirement accounts and life insurance policies; and

(e) Husband shall pay all Wife's legal fees and costs of court in connection with the divorce proceeding.

3. If Wife seeks a divorce from Husband, not as a result of an Illicit Act of Husband after the date of this Agreement:

(a) Nothing in this Agreement shall prevent Wife from seeking a divorce from Husband for any reason. In such case, the parties agree that this Agreement shall not be used to determine, limit or relieve the rights and/or obligations of either party with respect to spousal support, maintenance, alimony pendent elite [sic], alimony, counsel fees or costs or any other payments of a similar nature to which he or she, in the absence of this Agreement might be entitled to by statute, including rights arising pursuant to the Divorce Code of 1980, as amended, or any similar laws of any jurisdiction which may be applicable now or at any future time.

Post-Nuptial Agreement, 12/12/2008, at 2-3.

Instantly, based upon our review of the record, we are constrained to agree with Ex-Wife that the trial court erred when it, *sua* sponte, declared the Agreement void and unenforceable, despite the parties stipulating to its

validity before the master in 2016. More to the point, neither party challenged the validity of the Agreement when they filed exceptions to the master's August 15, 2016 report. Indeed, Rule 1920.55-2, relating to exceptions from a master's report, provides in pertinent part that "[e]ach exception shall set forth a separate objection precisely and without discussion. Matters not covered by exceptions are deemed waived unless, prior to entry of the final decree, leave is granted to file exceptions raising those matters." Pa.R.C.P. No. 1922.55-2(b). Here, it is clear that the trial court did not have before it a question regarding the Agreement's validity. Additionally, it is settled that postnuptial agreements are to be evaluated under the same standards as other contracts and that absent fraud, misrepresentation, or duress, spouses are bound by the terms of their agreements. **See Stackhouse v. Zaretsky**, 900 A.2d 383, 386 (Pa. Super. 2006), **appeal denied**, 912 A.2d 838 (Pa. 2006). Our Supreme Court has cautioned that courts must not act in a manner that would "constitute a paternalistic and unwarranted interference with the parties' freedom to enter contracts." **Simeone v. Simeone**, 581 A.2d 162, 166 (Pa. 1990) (concluding that, consistent with traditional principles of contract law, courts cannot impose a *per se* requirement that parties entering into a prenuptial agreement must obtain legal counsel). To avoid such paternalistic and unwarranted interference, we must conclude that the trial court here erred when it *sua sponte* raised and decided, contrary to the parties' stipulation, the validity of the Agreement. **See J.F. v. D.B.**, 897 A.2d 1261, 1277-78 (Pa. Super. 2006) (noting that the trial court, without a

- 13 -

request to do so, assessed the validity of the contract). Finally, courts generally are prohibited from *sua sponte* raising non-jurisdictional issues, which necessarily would include the validity of an agreement. ***See Turner Const. v. Plumbers Local 690***, 130 A.3d 47, 63 (Pa. Super. 2015) (noting that it is improper for courts to raise *sua sponte* non-jurisdictional issues); ***cf. In re Adoption of K.M.G.***, 219 A.3d 662, 668 (Pa. Super. 2019) (*en banc*) ("It is foundational that jurisdictional questions may be raised *sua sponte*."), ***aff'd***, 240 A.3d 1218 (Pa. 2020). Accordingly, we remand this matter to the trial court with direction to decide the parties' exceptions filed in connection with the August 15, 2016 master's report. Furthermore, upon determining which provision, if any, of the Agreement applies to this case, the trial court is directed to remand the matter to the master for further proceedings for purposes of distributing marital assets.[10]

Orders vacated. Case remanded. Consolidation order vacated. Appeal at docket no. 1932 MDA 2019 dismissed. Jurisdictional relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/19/2021

---

[10] Lest there be any confusion, given the outcome herein, the trial court's August 14, 2017, September 7, 2017 orders, the master's April 13, 2019 report and the trial court's related October 31, 2019 order are rendered null and void.