J-A22011-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MICHAEL T. KURTAS, JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RANDI E. KURTAS | : | No. 1569 MDA 2020 |

Appeal from the Order Entered December 3, 2020
In the Court of Common Pleas of Lancaster County Civil Division at
No(s):  CI-10-07648

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY BOWES, J.:                    **FILED: MARCH 11, 2022**

Michael T. Kurtas, Jr. ("Husband") appeals from the December 3, 2020 order directing him to continue to pay Randi E. Kurtas ("Wife") alimony in the amount of $2,026.40 per month.  We affirm.

Husband and Wife married on August 22, 1982, separated on July 1, 2010, and divorced on January 3, 2014.  In anticipation of the dissolution of the marriage, on October 11, 2013, the parties entered a comprehensive postnuptial agreement that, *inter alia*, established Husband's obligation to pay monthly alimony until December 31, 2023.  Regarding alimony, the agreement provided, in pertinent part, as follows:

> [Beginning December 31, 2013,] Husband shall pay Wife a sum of $3,400 per month for a period of eight years (96 consecutive months) and thereafter pay Wife a sum of $1,000 per month for an additional two years (24 consecutive months).

Postnuptial Agreement, 11/10/13, at 5, ¶8.

As it related to the modification of this obligation, the agreement continued:

> Husband's support obligation is non-modifiable in amount as well as duration unless Husband experiences an involuntary reduction in his income through no fault of his own, Wife's death, remarriage, or cohabitation with an unrelated male individual. **In the event Husband experiences an involuntary reduction in his income through no fault of his own, the amount of any reduction in Wife's support/alimony shall be in the same percentage as the reduction in Husband's income** when taking into consideration his salary, cost of employer provided health insurance, bonuses, commissions, car allowance, clothing allowance, any other employer paid benefits, as well as any other sources of income for Husband. For example, if Husband's income is involuntarily reduced by 10% then Wife's support/alimony shall be reduced by 10%. **In the event Husband does not attempt to minimize any involuntary reduction in his income and/or secure alternative employment to maintain an income stream sufficient to satisfy his support/alimony obligation to Wife, he shall not be entitled to a reduction in his support/alimony obligation to Wife**.

*Id*. at 6-7, ¶8 (emphases added). The parties agreed to use Husband's base gross salary of $263,588.00, or $5,069.00 per week, to calculate any modifications to the alimony obligation.

On April 3, 2020, Husband was terminated from his position as the general manager of Rumson Country Club, a position that he had held for the prior eleven years. Husband received a $70,000 severance and was eligible for unemployment. Following Husband's termination, he filed a petition to modify alimony, but the parties reached a temporary agreement to permit Husband to pay reduced alimony in the amount of $2,026.40 per month for the remainder of 2020. The amount was based on the income drawn from Husband's $70,000.00 severance and his unemployment benefits. The

interim order that memorialized the parties' agreement continued the alimony hearing until December 1, 2020.

At the ensuing hearing, Husband sought a further, permanent reduction in the alimony support based on his continued unemployment. Wife contested any further reduction, arguing that Husband neglected his contractual duty to mitigate his loss of income. Rather than deny any deduction, as would be warranted under the agreement, she proposed that the court assess an earning capacity to calculate Husbands' obligation. Both Husband and Wife testified, and Husband introduced six exhibits to document his employment search and unemployment status, respectfully.

On December 3, 2020, the trial court entered the above-referenced order finding that Husband failed to adequately mitigate the reduction of income, assessing an earning capacity to Husband of $157,100 per year, and ordered that Husband's monthly alimony obligation remain $2,026.40. This timely appeal followed. Both Husband and the trial court complied with Pa.R.A.P. 1925.

Husband presents four issues for our review:

1. Whether the trial court erred and/or abused its discretion in finding that Husband had not adequately mitigated his reduction in income consistent with the parties' Postnuptial Agreement.

2. Whether the trial court erred as a matter of law in considering Husband's earning capacity when interpreting the parties' Postnuptial Agreement and further erred in concluding that Husband had an earning capacity of $157,100.00.

3. Whether the trial court erred in permitting Wife to testify as to the circumstances that existed prior to the execution of the Postnuptial Agreement as well as her current financial circumstances.

4. Whether the trial court erred in failing to address a method for the application of credit for Husband's overpayment as stipulated to by counsel on the record.

Husband's brief at 5.

We start by noting the relevant legal principles. "A settlement agreement between spouses is governed by the law of contracts unless the agreement provides otherwise." *Stamerro v. Stamerro*, 889 A.2d 1251, 1258 (Pa.Super. 2005). Such an agreement "imposes a duty of good faith and fair dealing to perform contractual obligations diligently and honestly." *Id*. at 1261. Furthermore, "When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function." *Id*. at 1257. "In determining whether the trial court properly applied contract principles, the reviewing court must decide, based on all the evidence, whether the trial court committed an error of law or abuse of discretion." *Lewis v. Lewis*, 234 A.3d 706, 711 (Pa. Super. 2020) (citation omitted).

In denying Husband's petition to reduce his alimony obligation, the trial court reasoned that Husband's mitigation evidence was insufficient under the circumstances of this case. The trial court made explicit credibility determinations against Husband's assertion that his skills do not translate to opportunities beyond the management of country clubs or community

- 4 -

associations. Thus, while acknowledging that Husband applied for thirty-two jobs within those industries, the court rejected Husband's contention that his probability of finding employment that fulfilled his earning potential was best served by a utilizing a narrow focus. The court determined, "Appellant's job search was insufficiently broad so as to be reasonably calculated to return employment offers, given the effect of the ongoing pandemic on the hospitality industry." Trial Court Opinion, 2/19/21, at 3. It reasoned that Husband's failure to look for meaningful employment outside of county club management did not satisfy his contractual obligation to mitigate the loss of income. It explained its rationale as follows:

> Despite having been out of work for eight months prior to the hearing in December 2020, [Husband] testified that he had only applied for thirty-two jobs. This translates to a rate of less than one job application being submitted, on average, per week. A postnuptial agreement "imposes a duty of good faith and fair dealing to perform contractual obligations diligently and honestly," including the payment of the bargained-for amount of alimony. **Stamerro**[, **supra** at 1261]. The parties' agreement here clearly imposes on [Husband] the duty, in the event of an involuntary reduction in his income, to make every reasonable effort to minimize the reduction in income and to maintain a sufficient income stream to continue paying the alimony obligation. As in **Stamerro**, the Court here found that [Husband]'s testimony not credible regarding the efforts taken to prevent or minimize a reduction in income. While it might not be ideal for [Husband] to take a position in another industry, [Husband]'s unwillingness to broaden his job search to positions in other industries does not meet his duty to maintain an income stream. [Husband]'s testimony that none of his job skills would translate to another industry simply was not credible.

**Id**. at 3-4 (cleaned up).

- 5 -

Husband's first argument is that the trial court abused its discretion in finding that he failed to adequately mitigate the loss of income as required by the alimony provision in the postnuptial agreement. Essentially, he challenges the trial court's factual findings and credibility determinations that led to the conclusion that he did not explore all available avenues to obtain employment following his termination from the Rumson Country Club. Noting his age, the fact that his separation from employment coincided with the economic shutdown that stemmed from the COVID-19 pandemic, and the uniqueness of his skill set as a manager of a country club, Husband asserts, "[F]or the court to conclude that a sixty-six year old individual should look for employment outside of a field that he has worked in for the last twenty-five years and during a national pandemic when unemployment is at an all-time high, is patently unreasonable." Husband's brief at 13 (cleaned up). Thus, he contends that the trial court erred in failing to give adequate weight to the evidence that he presented concerning his effort to find suitable employment.

In opposition to Husband, Wife contends that the certified record illustrates that Husband did not act in good faith in attempting to mitigate his loss of income. Building upon the trial court's adverse credibility determination, she argues that Husband's considerable management experience and certification within the hospitality industry were sufficiently marketable and transferrable to other businesses that he could have obtained "gainful employment" in another industry if he had proceeded in good faith.

Wife's brief at 13. She asserts that Husband's testimony that he submitted what amounts to one application per week within his narrow trade is insufficient to established good-faith efforts to mitigate. She further observes that, although Husband is eligible for retirement, he elected to subsist on unemployment benefits rather than mitigate the diminished revenue by accessing his retirement income or social security benefits. Husband's amortized severance was exhausted in January 2021, and unemployment compensation is his sole source of income.

For the following reasons, we conclude that the trial court did not abuse its discretion in rejecting Husband's request to reduce his alimony payments commensurate to his actual income. Husband testified that he does not have any health conditions that limited his employment opportunities. N.T., Hearing, 12/1/20, at 20. As to his attempt to secure a position within his field of expertise, Husband stated that his search included contacting professional organizations with extensive career resources, executive search firms that cater to the "club industry" and employment websites such as Indeed® and LinkedIn®. *Id*. at 16. In addition, he worked with several headhunters in New Jersey, who informed neighboring country clubs of his availability. *Id*. at 19-20.

Husband testified that he commits approximately twenty-five hours per week to the employment search, and, as noted *supra*, submitted thirty-two applications in response to various postings garnered from the above-noted

resources, mostly search firms and professional contacts. *Id*. at 16-17, 21. Those opportunities ranged in salary from $100,000 to $300,000. *Id*. at 19.

Husband also conceded that his professional certification made him more marketable but stated that his qualifications are industry-specific and would not translate to other fields. *Id*. at 17-18 ("One of my focuses is to try to maintain the same earning potential and the club field is where my maximum earning potential would lie"). The search focused on the northeast region but included positions in Georgia and "the Carolinas." *Id*. at 18. In this vein, Husband highlights that he branched out his job search to include managerial positions in private clubs and community associations. *Id*. at 12.

As to his unsuccessful efforts, Husband observed, "In some cases it was simply a contact to let people know that I'm open for work. So[,] it just says contact and some cases the job has been filled and it says closed. And in some cases[,] I'm still waiting to hear back from the prospective employer." *Id*. at 13. As to whether he considered retirement, which would have provided a stable source of income, Husband explained that it was his intention to find employment because he was not ready to retire. *Id*. at 14.

Thus, by Husband's own testimony, Husband averaged less than one application per week over the eight-month period and refused to look for employment beyond opportunities in club and facility management. Indeed, the record is utterly bereft of any inquiries into other aspects of the hospitality industry beyond managing clubs and community facilities. As the foregoing

evidence in the certified record supports the trial court's finding of facts and credibility determinations, we do not disturb the court's conclusion that Husband failed to properly mitigate the loss of income as required by the express terms of the postnuptial agreement. **See Stamerro**, **supra** at 1257 ("When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function."). Accordingly, this aspect of Husband's challenge the December 3, 2020 order fails.

Next, we address Husband's contention that the trial court erred in imputing an earning capacity of $157,100.00. The crux of this argument is that the postnuptial agreement does not mandate the use of an earning capacity and the trial court lacked the authority to modify the accord to impose it.

Husband is correct insofar as, "Absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." **Stackhouse v. Zaretsky**, 900 A.2d 383, 386 (Pa.Super. 2006). However, the parties modified the contract in 2020 when they elected to temporarily reduce Husband's monthly alimony obligation to $2,026.40. This appeal stems from Husband's subsequent request for further modification based on his anticipated reduction of income when he exhausts his severance pay. The trial court denied that request due to Husband's failure to satisfy the contractual duty to minimize the income loss by securing employment to

maintain a sufficient income stream. As the trial court found that Husband failed to mitigate the loss of income or secure alternative employment, the postnuptial agreement provided that Wife was entitled to the **full** amount of monthly alimony, $3,400, that was calculated by using the Husband's base gross salary of $263,588.00. ***See*** Postnuptial Agreement, 11/10/13, at 5, ¶8 ("In the event Husband does not attempt to minimize any involuntary reduction in his income and/or secure alternative employment to maintain an income stream sufficient to satisfy his support/alimony obligation to Wife, he shall not be entitled to a reduction in his support/alimony obligation to Wife."). However, rather than impose such a severe obligation upon Husband during the pandemic, and with no objection from Wife, the trial court elected to maintain the status quo that the parties previously negotiated.

Thus, although the trial court styled its calculation as using Husband's earing capacity, it merely denied Husband's request for an additional reduction and held Husband to the obligation that he agreed upon following his termination from employment. As the court explained, "The amount of $157,000 leads to the monthly alimony obligation remaining at $2[,]026.40 per month, which was the reduced amount the parties agreed to on an interim basis following the loss of Appellant's employment." Trial Court Opinion, 2/19/21, at 5. Considering the foregoing, we reject Husband's assertion that the trial court erred in failing to impose the exact terms of the postnuptial agreement.

Husband's next contention is that the trial court erred in permitting Wife to testify as to the circumstances that existed prior to the execution of the postnuptial agreement and her current financial circumstances. He argues that Wife's testimony concerning the marriage or her post-separation employment efforts were irrelevant to Husband's contractual obligation to pay alimony. He argues that the trial court necessarily relied upon some portion of the testimony because, in rejecting Husband's assertion, the trial court stated that it "afforded little weight to evidence regarding the circumstances prior to the execution of the Postnuptial Agreement" and that it was "helpful merely for the purpose of setting the contextual background for the petition." Husband's brief at 21-22 citing Trial Court Opinion, 2/19/21, at 7. Relying upon the foregoing statements, Husband argues that the trial court erred insofar as "the court is acknowledging that this evidence did provide some weight in its decision[.]" *Id*. at 21. For the reasons that follow, no relief is due.

In *Grove v. Port Auth. of Allegheny Cty.*, 218 A.3d 877, 888 (Pa. 2019), our High Court reiterated,

> The harmless error doctrine underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake.

*Id*. (quoting *Harman ex rel. Harman v. Borah* 756 A.2d 1116, 1122 (Pa. 2000)).

- 11 -

As is evident from the trial court's statement of rationale, the trial court denied Husband's entreaty because Husband failed to mitigate the loss of income as required by the postnuptial agreement. *See* Trial Court Opinion, 2/19/21, at 3-4. Notwithstanding Husband's protestations that the information contributed to the court's decision to deny his request to reduce his monthly alimony obligation, we see no reason to ignore the trial court's proffered rationale. Stated plainly, absent an indication of prejudice in the certified record, we will not suppose that the trial court's determination concerning Husband's failure to comply with his contractual obligation was tainted by Wife's testimony regarding background information, which was helpful merely for the purpose of setting the contextual background for Husband's petition. Thus, this argument also fails.

Finally, we address Husband's argument that "The trial court erred in failing to address a method for the application of credit for Husband's overpayment as stipulated to by counsel on the record." Husband's brief at 23. This issue concerns a $2,270.72 credit that the parties stipulated was owed to Husband for overpayments made to Wife over the course of the alimony obligation. The parties disagreed, however, as to how the overpayments would be proportionally divided to reduce Husband's monthly obligation. Husband argues that the trial court confirmed the stipulated credit on the record during the hearing and acknowledged the need for an order explaining how the credit would be assessed but nevertheless neglected to

- 12 -

address that issue prior to the close of the hearing. Husband's brief at 23. Again, no relief is due.

Husband misstates the relevant exchange concerning the credit. Contrary to Husband's characterization, the trial did not indicate that it would address the overpayment immediately. Indeed, during the hearing, the parties stated that they would determine a method to apply the credits **after** the court addressed Husband's pending request to reduce the alimony obligation based upon his reduction of income. Wife's counsel explained, "once we know th[e] amount [of the reduction], then we can do a final tally for the last two and a half years of alimony. **We were intending to address it that way**." N.T. Hearing, 12/1/20, at 6 (emphasis added). Thus, as the trial court accurately observed, "[T]here was no request made for a method for addressing the over payments, and in fact the discussion with counsel on the record indicated that the parties intended to come to an agreement to address the amount of overpayment after a determination was made on Appellant's Petition to Modify Alimony[.]" Trial Court Opinion, 2/19/21 at 7. As neither party proposed a method to prorate the credit, the trial court did not err or abuse its discretion in failing to revisit the issue *sua sponte* in the December 3, 2020 order.[1]

---

[1] Husband did not request specific relief in relation to this issue. To the extent that he desires to have the credit applied to proportionally reduce his monthly alimony obligation, he need only submit a proposal to the trial court as the parties envisioned during the December 2020 hearing.

Therefore, since none of Husband's issues merits relief, we affirm the trial court's order directing him to continue to pay Wife $2,026.40 per month in alimony.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/11/2022